# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

DAKOTA L. HOWELL,

                Petitioner,           :     Case No. 3:21-cv-083

    - vs -                           District Judge Michael J. Newman
                                         Magistrate Judge Michael R. Merz

NORMAN ROBINSON WARDEN,
  London Correctional Institution,

                                     :
            Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Dakota Howell under 28 U.S.C. § 2254 to obtain relief from his conviction in the Greene County Court of Common Pleas, is before the Court for decision on the merits. Relevant pleadings are the Petition (ECF No. 5), the State Court Record (ECF No. 13), the Return of Writ (ECF No. 14), and Petitioner's Traverse (ECF No. 20).

**Litigation History**

On August 31, 2018, the Greene County grand jury charged Howell with rape in violation of Ohio Rev. Code § 2907.02(A)(2). (Indictment, State Court Record, ECF No. 13, Ex. 1). After his motion to suppress was denied, Howell tried this case to a jury which found him guilty. The trial court sentenced him to eight years imprisonment. He appealed to the Ohio Second District Court of Appeals

1

which affirmed his conviction.  *State v. Howell*, 2020-Ohio-821 (Ohio App. 2nd Dist. Mar. 6, 2020),

appellate jurisdiction declined, 160 Ohio St. 3d 1439 (2020).  On August 20, 2020, Howell filed an

application for the reopening of his appeal pursuant to Ohio App. R. 26(B) based on the alleged

ineffective assistance of appellate counsel. (Application, ECF No. 13, Exhibit 23).  The Second District

denied the Application on October 16, 2020, and the Supreme Court of Ohio again declined to exercise

its appellate jurisdiction.  *Id.* at Exs. 25, 30.

Howell filed his Petition in this Court on February 26, 2021, pleading the following grounds

for relief:

> **Ground One**: The trial court erred in overruling Howell's motion to suppress.
>
> **Supporting Facts:** Coupling together Hartwell's failure to record the 2-3-minute interaction (during which Howell confessed to consensual sex with Buckley) with Howell's assertion of his *Miranda* rights on the recording, the voluntariness of Howell's confession should be questioned. It should also affect the credibility of Hartwell's assertion that Howell made an incriminating response on the other hand (unrecorded) but then immediately invoke his rights on the other hand (recorded).
>
> **Ground Two**: The trial court erred by permitting the State to question Howell about prior allegations of alleged sexual misconduct (that never happened).
>
> **Supporting Facts:** Here, the questioning given over objections, does not tend to show scheme or opportunity. In essence, the State was allowed to question Howell on his prior bad acts and past sexual history when his identification was not at issue (he admitted sexual conduct but claimed it was consensual). Such questioning was inadmissible under R.C.2945.59, and in fact, it is precisely the type of testimony that Evid.R.404(8) and the rape shield statutes were designed to prevent. Furthermore, the matter Howell was being questioned about was hearsay and should not have been allowed in the first place.
>
> **Ground Three**: Howell's right to a fair trial was prejudiced because the trial court failed to give proper limiting instructions regarding past, prior allegations of sexual misconduct.

**Supporting Facts:** First, the limiting instruction was not timely. It was given after Howell's cross and redirect ware completed. Second, the instruction was insufficient because the jury was not instructed that the evidence "must not be considered as proof that Defendant committed the crime charged." The instruction here only mentioned it was to be considered for determining credibility. Because of this error, Howell was denied his right to a fair trial.

**Ground Four**: The verdict was against the manifest weight of the evidence and was not supported by sufficient evidence.

**Supporting Facts:** The trial centered heavily on the credibility of Buckley and Howell since there was absolutely no forensic or physical evidence or even a single witness to substantiate (or corroborate) Buckley's claim that she was forcibly raped. Buckley's own statements contradicted her own testimony. Buckley also said there were no places to sit but a witness (Roy Lewis) testified to the contrary - that there were plenty of places to sit. She also had had past sexual conduct with Howell, she waited to report the alleged crime arid her story was unbelievable at best.

**Ground Five**: Howell was denied his right to a fair trial when Detective Hartwell testified about retrieving Howell's address off a "law enforcement information website".

**Supporting Facts:** On direct, Hartwell explained his efforts to ascertain Howell's whereabouts. (Interestingly, Howell lived at the same residence when law enforcement was "searching" for him. It begs to question why Hartwell needed to search for Howell - let alone testify about the "law enforcement website".)

This portion of Hartwell's testimony was prejudicial in several ways, as it suggested Howell had a criminal history. Why else would there be information on him in a "law enforcement information website"? Second, it suggests that Howell may have been hiding from the police which was NEVER testified to, only suggested by this testimony.

**Ground Six**: Howell was denied the effective assistance of counsel at trial.

**Supporting Facts:** Howell contends that his trial counsel was ineffective in (1) failing to properly cross examine the alleged victim by playing her recorded statement while impeaching her; (2) Failing to request a proper limiting instruction concerning the testimony of prior allegations of sexual misconduct; (3) failing to object to the

3

testimony of Hartwell (p.176). In this case, Buckley's credibility was crucial at trial and when counsel failed to play her statement to show that her testimony was not credible, it prejudiced Howell's right to a fair trial.

Counsel also agreed to an instruction on the past allegations of sexual misconduct that was both incomplete and insufficient (see assignment of error #3 supra).

Counsel also did not object to Detective Hartwell's testimony concerning retrieving Howell's address from a "law enforcement information website". This testimony, while brief, likely prejudiced Howell as it told the jury that Howell may have had a prior experience with the law, and that he may have been attempting to elude police which also may have given the jury a false sense of guilt on the Defendant that was certainly unfounded.

**Ground Seven**: The ineffective assistance of appellate counsel prejudiced the appellant when he incorporated the arguments of sufficiency and the manifest weight of the evidence.

**Supporting Facts**: Appellate counsel was deficient. when he chose to flagrantly argue incorporating the arguments of sufficiency and the manifest weight of the evidence instead of separately arguing each. These two issues have two entirely different legal concepts and should never be incorporated. By doing so, appellate counsel in denying Appellant a full and fair review.

**Ground Eight**: Trial counsel failed to properly prepare Appellant for the upcoming trial and/or intentionally asked a question he did not know the answer to in order to prejudice Appellant's rights to a fair trial.

**Supporting Facts:** Trial counsel asked Appellant an open-ended question that opened the door for the State to question Appellant about rumors that NEVER occurred. Appellant believes this is because trial counsel never properly met or prepared Appellant for the upcoming trial, and instead ended up asking Appellant a question that caused him to be convicted of a crime for which he did not commit.

**Ground Nine**: Trial counsel failed to object to the state failing to call a witness to corroborate the purported allegations of prior sexual misconduct which violated Appellant's right to a fair trial.

4

**Supporting Facts:** Trial counsel should have objected and/or demanded that the trial court order the State to bring forth a victim and/or witness that would have attested to these purported allegations of prior sexual misconduct. Instead, the State was allowed to use "unspecified general allegations" which were never substantiated or corroborated to convince the jury that Howell should be found guilty based on untrue facts that were rumors spread by the alleged victim herself. If trial counsel would have done so, the jury would have discovered that the allegations were both untrue and made up by the alleged victim in this case. Which would have hurt her credibility even more, and would have showed that the alleged victim was not being truthful about anything she told.

(Petition ECF No. 5, Page ID 40-48).

# Analysis

**Ground One:  Failure to Suppress Petitioner's Statement**

In his First Ground for Relief, Petitioner claims his statement to Detective Hartwell admitting that he had sexual intercourse with the victim-witness but asserting it was consensual should have been suppressed.

Petitioner presented this ground for relief to the Second District Court of Appeals which decided it as follows:

[*P2]  On October 4, 2017, Fairborn Police Officers Pierre Harris and Jon Matheny were dispatched to the lobby of the police station to meet with C.B. and her friend, C.N. C.B. informed the officers that she had been raped on October 1, 2017. She identified Howell as the perpetrator. The officers took a report and accompanied C.B. to her apartment, where they collected the clothing she had been wearing at the time of the offense. They then directed her to a local hospital for an examination.

[*P3]  Fairborn Police Detective Shane Hartwell was assigned to investigate the matter. Hartwell met with C.B. Thereafter, he made

attempts to contact Howell. Because Hartwell was unable to locate Howell, he caused a probable cause warrant to be issued. On August 23, 2018, Howell turned himself in at the Fairborn Police Department. On that date, Hartwell met Howell in the jail facility and escorted him to an interview room where an interview was conducted. Following the investigation, Howell was indicted on one count of rape in violation of R.C. 2907.02(A)(2).

[*P4] Howell filed a motion to suppress the statements made to Det. Hartwell during the interview. A hearing on the motion was conducted on October 11, 2018. Hartwell testified that as he was escorting Howell to the interview room, Howell stated that he had been in the process of applying for a job at a store when the manager of the store informed him that there was an outstanding warrant for his arrest. Hartwell testified that he placed Howell in the interview room and immediately proceeded to discuss and execute a pre-interview form setting forth Howell's Miranda rights. Hartwell testified that Howell did not appear to be under the influence of drugs or alcohol, that Howell appeared to understand his rights, and that no promises or threats were made to cause Howell to participate in the interview. According to Hartwell, Howell initialed and signed the form, which was introduced into the record. Hartwell then entered a time of 12:40 p.m. in the upper right corner of the form and executed his own signature. Hartwell testified that, as is his normal practice, he filled in the time on the form after Howell executed the form. Hartwell testified that after writing in the time and signing the form himself, he began to ask Howell questions. Hartwell testified that Howell indicated he was aware of the nature of the charge against him and who had made the complaint. Hartwell testified that Howell also indicated that he and the victim had engaged in consensual sex.

[*P5] Hartwell testified that the interview room was equipped with audiovisual recording equipment which must be turned on by a switch located outside of the room. Hartwell testified that, after executing the form and hearing the above statements from Howell, he realized he had forgotten to turn on the recording equipment. Hartwell testified that he then stepped outside of the room and flipped the switch to the on position.

[*P6] The recorded portion of the interview was made part of the record. The video indicates that the recording began at 12:42 p.m. On the video, Hartwell walked from the doorway to a table where Howell was seated. A document can be observed on the table. Hartwell asked Howell whether they had reviewed the form and discussed Howell's rights. Howell indicated that they had reviewed

and discussed the form and his rights. Hartwell then asked Howell if he had indicated that he was willing to talk to Harwell without the presence of a lawyer. Howell stated that he had agreed to the interview, but that he no longer wanted to speak to Hartwell. Hartwell reiterated that Howell had agreed to talk but now did not want to talk. Howell again stated that he no longer wished to speak to Hartwell. Howell also made several statements thereafter.

[*P7] Following the hearing, the trial court overruled the motion to suppress the statements made to Hartwell prior to the point that Howell asserted his wish to remain silent, but sustained the motion with regard to the statements made thereafter.

* * *

[*P19] Howell's first assignment of error states:
THE TRIAL COURT ERRED IN OVERRULING HOWELL'S MOTION TO SUPPRESS.

[*P20] Howell argues that the trial court should have suppressed the statements he made to Hartwell because the record does not support a finding they were voluntary.

[*P21] "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." (Citation omitted.) *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. * * * Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Citations omitted.) *Id*.

[*P22] Howell argues that "[c]oupling together Hartwell's failure to record the 2-3 minute interaction (during which Howell confessed to consensual sex with [C.B.]) with Howell's quick and clear assertion of his Miranda rights on the recording, the voluntariness of Howell's confession should be questioned. It should also affect the credibility of Hartwell's assertion that Howell make [sic] an incriminating response on the one hand (unrecorded) but then immediately invoked his rights on the other hand (recorded)."

[*P23] The mere fact that Howell decided to terminate the interview after the recording equipment was activated does not render any previous admissions involuntary, nor does it impact Hartwell's credibility. Hartwell's testimony regarding Howell's decision to speak to him was actually corroborated by Howell's acknowledgement, on the recording, that he had previously agreed to speak to Hartwell without an attorney. The trial court was aware of Howell's quick decision to terminate the interview after the recording was started, and it nevertheless found Hartwell's testimony about Howell's statements credible. The mere fact that a suspect has a change of heart regarding his decision to speak with law enforcement does not lead to the conclusion that any statements made prior to that change of heart were involuntary.

[*P24] We find nothing on this record to indicate that Howell's statements to Hartwell prior to the initiation of the recording were involuntary. There was no evidence that Hartwell physically or mentally coerced Howell into speaking with him, nor was there evidence that Hartwell made any threats or promises. As stated, Howell admitted on the recording that he had agreed to speak to Hartwell. Further, we cannot say Hartwell's testimony was inherently incredible. Therefore, we cannot conclude the trial court abused its discretion by crediting Hartwell's testimony. Accordingly, the first assignment of error is overruled.

*State v. Howell, supra.*

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Because the Second District decided this claim on the merits, in order to prevail Howell must show that the appellate court's decision was contrary to or an objectively unreasonable

application of *Miranda v. Arizona*, 384 U.S. 436 (1966), and its progeny.

In his Traverse Howell does not quarrel with the legal basis of the Second District's decision. Instead he asserts its factual findings are unreasonable in light of the evidence presented.

> The system of justice does not include any detective saying what they want without corroboration [sic] or a recording. Obviously a recording was the normal procedure and because that procedure was not adhered to the detective could put forth whatever he felt. In short, the detective was truthful in the eyes of society because he is law enforcement. Obviously, with the scrutiny of law enforcement due to their lies and misconduct that is no longer the case.

(Traverse, ECF No. 20, PageID 842).

The Magistrate Judge disagrees. It is not now and never has been the law in the United States that testimony is inadmissible unless it is corroborated or the incident is recorded. Because the ability to make video and audio recordings has become so ubiquitous with the spread of cellphones, it is not surprising that someone would begin to make that assertion. And it is certainly correct that when a recording device is available and indeed it is usual police practice to use it with interviews, the credibility of a witness to an unrecorded event is quite properly attacked by noting that a recording was not made. But that was thoroughly done here and the Ohio courts found Detective Hartwell was telling the truth. The credibility of witnesses is committed to the judgment of the finder of fact, in this case the trial court deciding the motion to suppress. In the fifty-five years since the *Miranda* decision, there have been millions of statements by defendants admitted in evidence where there was no corroboration or recording.

Supporting the credibility of Detective Hartwell's testimony is the fact that Howell himself did not deny the admission at the suppression hearing (Transcript, ECF No. 13-1) or at trial. Also of note is the fact the suppression matter was heard by The Honorable James A. Brogan[1], one of

---

[1] Judge Brogan was elected to the Second District Court of Appeals in November, 1980. In retirement he serves at the request of the Chief Justice of the Ohio Supreme Court.

the most experienced judges in the State of Ohio and less likely than a less experienced judge may have been to believe police testimony just because it came from a law enforcement officer.

Howell has not shown the Second District's decision was an unreasonable application of *Miranda* or an unreasonable decision on the facts based on the state court record evidence.  The First Ground for Relief should therefore be denied.

**Ground Two:  Improper Questioning About Prior Bad Acts**

In his Second Ground for Relief, Howell claims the trial court erred by allowing him to be questioned about prior sexual activity in violation of Ohio Revised Code § 2945.59 and Ohio's rape shield law.

Federal habeas corpus is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983).   "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring).

The question whether the trial court or Second District erred in applying the rape shield law or Ohio Revised Code § 2945.59 is a question solely of Ohio law.  Violations of state law are not cognizable in habeas corpus.  *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).  Howell argues the allegations of prior bad acts made his trial fundamentally

unfair, but he cites no United States Supreme Court law to that effect, and indeed did not present this claim to the Second District as a constitutional claim. Moreover, the Supreme Court has never held that the admission of prior bad acts violates the Constitution. *Bugh v. Mitchell*, 329 F.3d 496 (6th Cir. 2003).

Howell's Second Ground for Relief is not cognizable in habeas corpus and should be dismissed on that basis.

**Ground Three: Improper Limiting Instruction on Prior Bad Acts**

In his Third Ground for Relief, Howell asserts the trial court's limiting instruction on the prior bad acts testimony was untimely and insufficient in content.

Howell presented this claim to the Second District as his Third Assignment of Error. *State v. Howell, supra,* at ¶¶ 33-41. The Second District reviewed the claim on a plain error basis because the instruction given was agreed on and no contemporaneous objection was made by Howell's counsel. *Id.* at ¶ 35. The Warden asserts this Ground for Relief is procedurally defaulted.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights

claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). "[A] federal court may not review federal claims that were procedurally defaulted in state courts." *Theriot v. Vashaw*, 982 F.3d 999 (6th Cir. 2020), citing *Maslonka v. Hoffner*, 900 F.3d 269, 276 (6th Cir. 2018) (alteration in original) (quoting *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261

12

F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Ohio has a relevant procedural rule requiring a contemporaneous objection to trial court error. *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998). The Second District enforced that rule against Howell in this case. The Sixth Circuit has repeatedly held the rule is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th

Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 562 U.S. 876 (2010).

Plain error review is an enforcement of the contemporaneous objection rule, not a waiver of it. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle*, 271 F.3d 239 (6th Cir. 2001).

Ground for Relief Three is also procedurally defaulted because it was never fairly presented to the Second District as a federal constitutional claim. To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009).

A claim is fairly presented if the petitioner

> (1) relied upon federal cases employing constitutional analysis; (2) relied upon state cases employing federal constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.

*Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017).

Merely using talismanic constitutional phrases like "fair trial" or "due process of law" does not constitute raising a federal constitutional issue. *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006); *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir. 1984). Mere use of the words "due process and a fair trial by an impartial jury" are insufficient. *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)(same). "A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument." *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995).

Upon examination, Howell's appellate brief does not satisfy the fair presentation standard. No federal cases or state cases using federal constitutional principles are cited. The facts are not within the mainstream of constitutional argument: as noted with Ground Two, there is no Supreme Court prohibition on use of prior bad acts. The Third Assignment of Error is argued entirely in terms of Ohio procedural law. Only at the very end does counsel assert "Howell was denied his right to a fair trial." (Appellant's Brief, State Court Record, ECF No. 10, Ex. 13, PageID 128). That is not an argument.

Howell relies on the dissenting opinion of The Honorable Mary E. Donovan on this assignment of error. The undersigned has the greatest respect for Judge Donovan who stands in the first rank of Ohio judges, along with Judge Brogan. But her dissent is based entirely on Ohio law. She cites no federal law in her dissent. A federal habeas court does not sit as an appeals court above state appellate courts. Rather we are charged with determining whether state court decisions are contrary to or objectively unreasonable applications of decisions of the United States Supreme Court on questions of constitutional law. No such question was presented to the Second District

on the Third Assignment of Error.

Howell does not argue any excusing cause for the failure to object or the failure to argue this as a constitutional issue on appeal. Accordingly his Third Ground for Relief should be dismissed as procedurally defaulted.

**Ground Four: Conviction Against the Manifest Weight of the Evidence and Supported by Insufficient Evidence**

In his Fourth Ground for Relief, Howell asserts his conviction is against the manifest weight of the evidence and is also supported by insufficient evidence.

A claim that a state conviction is against the manifest weight of the evidence does not state a federal constitutional claim on which habeas relief can be granted. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).

On the other hand, an allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting

16

*Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc);

17

*Parker v. Matthews*, 567 U.S. 37, 43 (2012).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam).  The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims.  *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

Howell raised his strength of the evidence claims together as his Fourth Assignment of Error and the Second District decided that assignment as follows:

> {¶ 42} Howell's fourth assignment of error provides:

> THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

> {¶ 43} In this assignment of error, Howell challenges both the weight and the sufficiency of the evidence by arguing that C.B. was not credible and that there was no physical evidence to corroborate her testimony.

> {¶ 44} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). In such situations, we apply the test from *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), which states that:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

(Citation omitted). *Id.* at paragraph two of the syllabus.

{¶ 45} "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12. When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." (Citations omitted.) *Martin* at 175.

{¶ 46} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. *Accord State v. Winbush*, 2017-Ohio-696, 85 N.E.3d 501, ¶ 58 (2d Dist.). As a result, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Citations omitted.) *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

{¶ 47} Howell was convicted of rape in violation of R.C. 2907.02(A)(2), which provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." "Sexual conduct" includes "vaginal intercourse between a male and female."

19

R.C. 2907.01(A). There is no dispute that Howell and C.B. had vaginal intercourse, as Howell admitted to the act when he stated the two engaged in consensual sex. There is also evidence upon which the jury could have reasonably concluded that Howell exerted force to compel C.B. to submit. Specifically, C.B. testified she was lying on her stomach and that Howell got on top of her when he "forcefully" pulled down her leggings and penetrated her vagina with his penis. Tr. p. 80.

{¶ 48} Howell claims C.B.'s testimony was not credible because she made contradictory statements about the offense. He also claims she was not credible because she testified there were no chairs in Howell's apartment. Finally, he claims that C.B. was inherently incredible because she delayed reporting the offense and because she and Howell had a past history of sexual relations.

{¶ 49} We note the jury was made aware of all of the statements which Howell argues were contradictory. We also note that C.B. was given the opportunity to explain any perceived inconsistencies. The jury was also aware of her testimony regarding the chairs in the apartment and was able to contrast that with the testimony of others that there were folding chairs in the apartment. Likewise, the jury heard evidence regarding the past relationship between C.B. and Howell as well as the delay in reporting the offense.

{¶ 50} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of fact to resolve. *State v. Hammad*, 2d Dist. Montgomery No. 26057, 2014-Ohio-3638, ¶ 13, citing *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). "This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way." *State v. Bradley*, 2d Dist. Champaign No. 97 CA 03, 1997 WL 691510, *4 (Oct. 24, 1997).

{¶ 51} The jury heard all of Howell's claimed inconsistencies and contradictions and still chose to credit C.B.'s testimony. As stated, C.B.'s testimony sets forth a sufficient basis for concluding that Howell committed the offense of rape.

{¶ 52} Finally, with regard to physical evidence, it is well established that physical evidence is not required to support a

conviction for rape against a manifest weight challenge. *State v. West*, 10th Dist. Franklin No. 06AP-11, 2006-Ohio-6259, ¶ 18; *State v. Thomas*, 2015-Ohio-5247, 54 N.E.3d 732, ¶ 31 (9th Dist.); *State v. White*, 3d Dist. Seneca No. 13-16-21, 2017-Ohio-1488, ¶ 54; *State v. Williams*, 2017-Ohio-8898, 101 N.E.3d 547, ¶ 19 (1st Dist.). Accordingly, the fact that Howell's conviction was based solely on C.B.'s testimony and not any physical evidence does not render his conviction against the manifest weight of the evidence.

{¶ 53} We cannot say Howell's conviction was against the manifest weight of the evidence and thus, we must also conclude there was sufficient evidence to sustain the conviction.

{¶ 54} The fourth assignment of error is overruled.

*State v. Howell, supra.*

Because the Second District decided Howell's insufficiency of the evidence claim on the merits, in order to prevail in habeas corpus he must show that the appellate court's decision was an unreasonable application of *Jackson* or based on an unreasonable determination of the facts based on the evidence in the state court record.

In his Traverse, Howell argues there was no physical evidence of rape and in particular that his DNA was not found in the rape kit and there were no physical signs of rape, such as vaginal tearing or bruising (ECF No. 20, PageID 847). He also emphasizes ways in which the complaining witness's testimony was impeachable and was in fact impeached. Howell admitted to having vaginal intercourse with the complaining witness at the time and place she testified to. She admitted that she was in that place and indeed in Howell's bed voluntarily at the time. She also admitted that she and Howell had had an intimate relationship which involved vaginal intercourse on a regular basis. Neither party denied that relationship had ended some months before. Neither denied that the complaining witness had come to Howell's residence voluntarily and at his request. The ultimate question is whether she consented to the intercourse. He says yes, she says no, and the question of their respective credibility is a jury question on which a federal habeas court must

21

accept the jury's answer. In other words, a complaining witness's testimony of lack of consent is sufficient evidence of rape. Howell's Fourth Ground for Relief is without merit and should be dismissed on that basis.

## Ground Five: Denial of Fair Trial: Testimony Regarding Law Enforcement Information Website

In his Fifth Ground for Relief, Petitioner claims he was denied a fair trial when Detective Hartwell testified he found Howell's whereabouts by inquiry to a law enforcement information website. Howell asserts this implied to the jury that he had a criminal record when in fact he did not.

Deciding this claim, the Second District held:

{¶ 55} Howell asserts the following for his fifth assignment of error:

HOWELL WAS DENIED HIS RIGHT TO A FAIR TRIAL WHEN DETECTIVE HARTWELL TESTIFIED ABOUT RETRIEVING HOWELL'S ADDRESS OFF A "LAW ENFORCEMENT INFORMATION WEBSITE."

{¶ 56} Howell contends he was unfairly prejudiced when Hartwell testified he used a law enforcement information website when attempting to locate Howell.

{¶ 57} As noted above, during his testimony about his attempts to locate Howell, Hartwell stated, "I looked him up on a law enforcement information website that provides past residences for people." Tr. p. 177. No objection was made. Thus, our review is limited to a plain error analysis.

{¶ 58} We note that Hartwell made only the one mention of the website during his testimony. The statement solely concerned Hartwell's attempts to locate Howell during the investigation. Hartwell's attempts at contact were relevant to the case because, throughout the trial, Howell focused on Hartwell's alleged failure to timely contact him regarding the offense. Further, Hartwell did not assert the site was used solely to search for persons who had criminal

22

> records or arrests. Indeed, his testimony could have been construed as merely indicating there was a law enforcement website that could be used for locating addresses of anyone. Finally, Ohio law has generally held that testimony concerning police investigations is admissible at trial. *See State v. Bailey*, 8th Dist. Cuyahoga No. 81498, 2003-Ohio-1834, ¶ 27-29.

> {¶ 59} We cannot find error, let alone plain error, on this record. Therefore, the fifth assignment of error is overruled.

*State v. Howell, supra.*

The Second District reviewed this claim only for plain error, enforcing Ohio's contemporaneous objection rule against Howell. On this basis, the Fifth Ground for Relief is procedurally defaulted. The claim is also procedurally defaulted on the same basis as Ground Three: it was not fairly presented to the Second District as a federal constitutional issue. Indeed, appellate counsel did the same thing here as on Ground Three: he concluded his argument by merely stating that "Howell's right to a fair trial was denied by allowing this plain error." (Appellant's Brief, State Court Record, ECF No. 13, Ex. 10, PageID 131).

If this Court were to reach the merits, it would conclude that Ground Five did not state a claim on which habeas corpus relief could be granted. As noted above with respect to Howell's Ground Two, there is no clearly established Supreme Court precedent prohibiting reference to prior bad acts. *A fortiori,* reference to locating a person's address on a "law enforcement information website" does not violate any such clear precedent.

Ground Five should therefore be dismissed as procedurally defaulted and without merit.

**Ground Six: Ineffective Assistance of Trial Counsel**

In his Sixth Ground for Relief, Howell claims that he received ineffective assistance of trial

counsel when his trial attorney (1) failed to impeach the complaining witness by playing her recorded statement during cross-examination; (2) failed to request a proper limiting instruction concerning the testimony of prior allegations of sexual misconduct; (3) failed to object to Detective Hartwell's testimony about retrieving Howell's address from a law enforcement information web site.

Howell presented this ineffective assistance of trial counsel claim as his Sixth Assignment of Error on direct appeal and the Second District decided it as follows:

> {¶ 60} Howell's sixth assignment of error states:
>
> HOWELL WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL.
>
> {¶ 61} Howell contends that his trial counsel was ineffective because he failed to (1) properly cross-examine C.B.; (2) request the proper limiting instruction concerning the admission of prior allegations of sexual misconduct; and (3) object to Hartwell's testimony regarding the fact that he used a law enforcement website to obtain Howell's address.
>
> {¶ 62} "Reversal of a conviction for ineffective assistance of counsel requires that the defendant show first that counsel's performance was deficient and second that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 74, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish deficient performance, a defendant must show that trial counsel's performance fell below an objective standard of reasonable representation. *Strickland* at 688. To establish prejudice, a defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* at 687-688, 694. The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 697. In our review of an ineffective assistance of counsel claim, "we will not second-guess trial strategy decisions, and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *State v. English*, 2d

Dist. Montgomery No. 26337, 2015-Ohio-1665, ¶ 10, quoting *State v. Mason*, 82 Ohio St.3d 144, 157-158, 694 N.E.2d 932 (1998). "Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available." *Id.*, citing *State v. Cook*, 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992).

10 {¶ 63} We first turn to the claim that trial counsel failed to conduct an adequate cross-examination of C.B. Specifically, Howell claims that C.B.'s testimony contradicted statements she made to Hartwell during the investigation of the offense. Thus, Howell contends that trial counsel should have played the recording that Hartwell made of those statements. He contends that "the failure to play the recording in front of the jury affected the impact [of the impeachment because C.B.'s] own voice impeaching herself would have impacted [her] credibility highly."

{¶ 64} This recording is not a part of the record before us, thus we cannot determine whether it would have had a greater impact on the jury than merely confronting C.B. about the alleged inconsistencies. Further, it is entirely possible that the recording contained other information that counsel did not want presented to the jury. In any event, the jury was made fully aware of the alleged inconsistencies between C.B.'s testimony and the statements made to Hartwell. Thus, we cannot say on this record that counsel was deficient in this regard.

{¶ 65} We next turn to the claim that counsel failed to request a proper limiting instruction regarding the allegations of sexual misconduct involving other women. Given our disposition of the third assignment of error, we conclude that counsel's conduct did not fall below an objective standard of reasonableness.

{¶ 66} Finally, we turn to the claim that counsel was ineffective because he failed to object when Hartwell mentioned his utilization of a law enforcement website. We note that Hartwell did not state the site was limited to individuals with criminal records or arrests. Indeed, it is possible that the jurors, based on this statement, believed that law enforcement has a website that permits the police to look up past residences for anyone. Also, Hartwell made one brief mention of the site during his more than 40-page testimony. Importantly, it is entirely possible that trial counsel made a strategic decision to forego an objection because he did not wish to emphasize the statement by objecting or seeking a limiting instruction. Thus, we cannot say that counsel acted unreasonably by failing to object.

{¶ 67} On this record, we cannot conclude trial counsel's performance fell below an objective standard of reasonableness. Therefore, we conclude Howell has failed to demonstrate that counsel was ineffective. Accordingly, the sixth assignment of error is overruled.

*State v. Howell, supra.*

The governing standard for ineffective assistance of counsel is found, as the Second District recognized, in *Strickland v. Washington*, 466 U.S. 668 (1984):

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance*, 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to overcome confidence in the outcome." 466 U.S. at 694.  See also *Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing *Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes,* 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011).

Because the Second District decided this claim on the merits, Howell must show their decision was contrary to or an objectively unreasonable application of *Strickland v. Washington,* 466 U.S. 668 (1984).

**Sub-claim One:  The Recording of the Complaining Witness's Statement**

Because the first sub-claim depended in part on the recording of the complaining witness's statement and the recording was not before the court of appeals, they could not evaluate the recording.  It is at least arguable that it could have been presented to the trial court as part of a petition for post-conviction relief under Ohio Revised Code § 2953.21 which allows Ohio courts to consider ineffective assistance of trial counsel claims which depend on evidence outside the appellate record.  The State Court Record does not show that Howell ever filed such a petition and the time in which he could have done so has now passed.  On that basis. the first ineffective assistance of trial counsel sub-claim is procedurally defaulted.

Howell does not argue this sub-claim at all in his Traverse.  He does not suggest how the Second District's hypothesis that by just confronting the complaining witness with inconsistencies, trial counsel avoided having the jury hear the whole statement which might well have included damaging material was somehow wrong.

Therefore the sub-claim about playing the recording is procedurally defaulted by failure to present it in a petition for post-conviction relief and without merit for failure to show how the Second District's decision is an unreasonable application of *Strickland*.

**Sub-claim Two:  Failure to Request a Proper Limiting Instruction**

In his second sub-claim, Howell argues he received ineffective assistance of trial counsel when his attorney did not request a proper limiting instruction regarding allegations of past sexual misconduct.

The Second District disposed of this sub-claim by referencing its decision of the Third Assignment of Error. *State v. Howell, supra*, ¶ 65. There it found the instruction given was only a slight variation on the instruction recommended in Ohio Jury Instructions[2] and that the variation was not prejudicial to Howell because the testimony was only given to impeach his statement that no one besides the complaining witness had ever accused him of sexual misconduct. *Id.* at ¶ ¶ 39-40. The Second District also noted that appellate counsel had not suggested an alternative instruction which would have been correct.

Howell does not argue this sub-claim in his Traverse. Under those circumstances, the Magistrate Judge concludes the Second District's decision on the sub-claim is not an unreasonable application of *Strickland*. Howell has cited no Supreme court precedent holding agreement to an instruction such as this one was ineffective assistance of trial counsel.

**Sub-Claim Three: Failure To Object To Detective Hartwell's Testimony About Retrieving Howell's Address From A Law Enforcement Information Web Site.**

In his third sub-claim of ineffective assistance of trial counsel, Howell claims his trial attorney provided ineffective assistance of trial counsel when he did not object to Detective Hartwell's testimony that he had located Howell's address from a "law enforcement information website."

On direct appeal, the Second District decided this claim as follows:

> {¶ 66} Finally, we turn to the claim that counsel was ineffective because he failed to object when Hartwell mentioned his utilization of a law enforcement website. We note that Hartwell did not state the site was limited to individuals with criminal records or arrests. Indeed, it is possible that the jurors, based on this statement,

---

[2] Ohio Jury Instructions or OJI is a publication of the Ohio Judicial Conference and represents the consensus of a committee of Ohio judges on what instructions are proper in various circumstances. Judge Mary Donovan, who dissented in Howell's favor in this case, has served on that committee.

> believed that law enforcement has a website that permits the police
> to look up past residences for anyone. Also, Hartwell made only one
> brief mention of the site during his more than 40-page testimony.
> Importantly, it is entirely possible that trial counsel made a strategic
> decision to forego an objection because he did not wish to emphasize
> the statement by objecting or seeking a limiting instruction. Thus,
> we cannot say that counsel acted unreasonably by failing to object.

*State v. Howell, supra.*

Howell argues this sub-claim in his Traverse. First, he says, if the objection had been made, there would be no occasion to speculate how the jury would have understood Hartwell's comment (ECF No. 20, PageID 850). But that assumes the objection would have been sustained. If it had, the judge would have had to instruct the jury to ignore what it had just heard about where Hartwell got the address. This would almost certainly have elevated the point in the jury's mind. When raising an objection could reasonably have been believed by a competent attorney to have called attention to a possibly unfavorable fact, it is rarely deficient performance for an attorney to forego that objection.

Howell also argues it was unreasonable for the Second District to suppose that the jury would have interpreted the testimony as meaning that law enforcement has a way of looking up past addresses that does not imply the addressee has a criminal record. Not so. Williams City Directories, published for over a century for most cities in America and available at most public libraries, gives past addresses and occupations for most people.

While it is possible that the use of the phrase "law enforcement information website" may have left the jury with the impression that the only information on that website referred to convicted criminals, the Second District's decision that it was acceptable strategy not to call further attention to the website by objecting or cross-examining about it is not an unreasonable application of *Strickland*.

Howell's claims in Ground Six of ineffective assistance of trial counsel should be dismissed.

## Ground Seven: Ineffective Assistance of Appellate Counsel

In his Seventh Ground for Relief, Howell claims his appellate attorney provided ineffective assistance of appellate counsel when he argued the manifest weight and sufficiency of the evidence claims together.

Petitioner raised this claim as his first omitted assignment of error in his Application for Reopening under Ohio R. App. P. 26(B)(State Court Record, ECF No. 13, Ex. 23, PageID 267, et seq.). Although he filed outside the normal time limits for a 26(B) application, the Second District found his time was extended by the provision adopted by the Supreme Court of Ohio to deal with the COVID-19 pandemic (Opinion, State Court Record 13, Ex. 25). On the merits, however, it denied relief. As to the joining of these two claims, it held:

> In his first argument, Howell contends appellate counsel should have made separate arguments regarding the sufficiency and manifest weight of the evidence rather than combining the two into one assignment of error. This argument lacks merit. While Howell is correct that sufficiency and manifest weight involve "two entirely different legal concepts," we have noted .... *• manifest weight may subsume sufficiency jn conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. Brock*, 2nd Dist. No. 2018-CA-102, 2019-Qhjo-3116, 140 NE 3d 1239, 1I 18. Further, a review of our opinion and the appellate brief demonstrate that the two issues were appropriately argued and that we considered both the sufficiency and the weight of the evidence.

(Opinion, State Court Record, ECF No. 13, Ex. 25, PageID 278).

As the Second District acknowledged, the *Strickland* standard applies to ineffective assistance of appellate counsel claims as well as ineffective assistance of trial counsel claims. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987).  Here the Second District held there was no deficient performance because the two claims were appropriately argued, even though combined in one assignment of error.  Likewise there was no prejudice because the court, on direct review, had separately analyzed the claims.

To prevail, Howell must show the Second District's decision was an unreasonable application of *Strickland*.  He has not done so.  In particular he has not cited any Ohio case in which the court has held that these issues must be argued separately or even that it is a best practice to do so.

Because the Second District's decision of this claim is a reasonable application of *Strickland*, it is entitled to deference under 28 U.S.C. § 2254(d)(1).  Petitioner's Seventh Ground for Relief should therefore be dismissed with prejudice.


**Ground Eight:  Ineffective Assistance of Counsel:  Manner of Questioning**


In his Eighth Ground for Relief, Howell claims his attorney provided ineffective assistance of trial counsel when he asked the question which Howell answered by saying he had never been accused by anyone besides the complaining witness of sexual misconduct.

During the course of his testimony, Howell, volunteered the statement that the complaining witness was the only person who had ever accused him of sexual misconduct.   This "opened the door" to the State's presentation of a witness, Gaddis, who confronted Howell about such accusations made by other women.

The fact that trial counsel asked the question in the way he did and the fact that Petitioner answered it by volunteering that no such accusation had even been made by anyone besides the complaining witness were of record in the trial transcript.  To the extent any ineffective assistance of trial counsel was embedded in the question, this claim could have been raised on direct appeal, but was not.  To the extent it depended on matter not of record – i.e., how counsel prepared or did not prepare Howell for this question – the claim could have been raised in a petition for post-conviction relief.  Because Petitioner did not raise it in either forum, it is procedurally defaulted and should be dismissed.

**Ground Nine:  Ineffective Assistance of Trial Counsel:  Failure to Object to the State's Failure to Call Corroborating Witnesses**

In his Ninth Ground for Relief, Petitioner asserts he received ineffective assistance of trial counsel when his attorney did not object to the failure of the State to call witnesses to corroborate prior acts of sexual misconduct.

The State did not present any evidence of sexual misconduct by Howell with anyone except the complaining witness.  What it did present was Gaddis's testimony that other women had accused Howell of sexual misconduct, admissible to impeach Howell's testimony that no one ever had.

It is difficult to see how Howell's case would have been helped by insisting on a witness to corroborate Gaddis's testimony.  Much worse would have been a witness who could have testified to actual, as opposed to alleged, prior sexual misconduct.  Howell's claim in many forms in his Petition is that the jury was invited to believe there were prior acts of sexual misconduct. How much easier would it have been for the jury to accept that invitation if other victims actually

testified to such misconduct? Ground Nine is therefore without merit: insisting on the State's calling such witnesses would itself have been ineffective assistance of trial counsel.

Moreover, any such claim is procedurally defaulted because it was not raised on appeal and could have been decided from the appellate record. Ground Nine should therefore be dismissed.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

October 29, 2021.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.